IN THE MATTER OF THE ESTATE OF
B. DORRANCE BEYEA, DECEASED.

*New Castle, Aug.* 14, 1940.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for petitioner, Equitable Trust Co., executor of B. Dorrance Beyea, deceased.

*W. L. Pace,* of Pittston, Pa., for First National Bank of Pittston, Pa., a respondent.

*John T. Mulhall* and *M. J. Mulhall,* both of Pittston, Pa., for Dime Bank & Trust Co., of Pittston, Pa., a respondent.

*J. Rankin Davis,* for Laird & Co., a respondent.

SPEAKMAN, Judge, delivering the opinion of the court respecting the claims of the two banks:

(1)   It is the contention of the respective banks that the notes were delivered in Pennsylvania and are payable there, and for these reasons the law of that state governs the character of the instruments. On the other hand, the respondent, Laird & Company, contends that proceedings under said *Section* 3837, as amended, should be regarded as affecting the remedy, and therefore we should look to the law of this state for the purpose of determining the character of the instruments. I am unwilling to subscribe to either of these views.

It is not difficult to appreciate the great confusion and uncertainty which would result in the settlement of estates

if the meaning of the words "Obligations and contracts under seal" is to be ascertained in the manner urged by the banks.

An interpretation of the phrase as contended for by the banks would mean that the signification of the language, instead of being fixed and definite, would be changed from time to time, as occasion might require, so as to conform to the language of statutes or decisions in other jurisdictions.

Fortunately, there is nothing in the law from which any inference can be drawn that it was the legislative intent that there should be such an interpretation.

There is no law in this state prescribing what is necessary to constitute a "Seal," and as the word came to us from the common law, in arriving at its meaning we should follow the familar rule of construction that when a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended. 25 *R. C. L.* 994. In the present case there is nothing in the language of the law to indicate that the word "Seal" was not to be given its common law meaning.

Upon the establishment of the Normans in England, the practice of authenticating all written instruments by waxen seals only, was introduced, 4 *Cruise's Dig.* 31, and the practice of using wax or some similar tenacious substance for such purpose undoubtedly continued thereafter for many years in that country, but I do not think that either under the common law of England or the common law of this state the use of wax or some such substance is indispensable.

In 1 *Sugden on Powers*, 300, the following appears:

"If the seal, stick, or other instrument used be impressed by the party on the plain parchment or paper with an intent to seal it, it is clearly sufficient."

In *Queen v. Inhabitants of St. Paul, Covent Garden,* 53 *A. & E. N. S.* 232, 115 *Eng. Rep.* 476, which was an appeal from the Court of Quarter Sessions, one of the grounds of appeal was that an order which was stated to be under the hands and seals of two justices was not signed and sealed by them. The form used for the order was a printed form. It was one of a number on which a stationer was employed to impress two marks in ink by means of wooden blocks, which were intended to serve as seals for the justices who might sign the orders. The Court of Quarter Sessions held that the impressions in ink made by the blocks were sufficient seals to make the order when signed and delivered by the justices a good and valid order.

On appeal, Lord Denman, C. J., said:

"We do not wish to encourage the slightest doubt on this last point [the validity of seals]. And we are obliged to say that the order is wrong on another ground."

In our own state, in the case of *Armstrong v. Pearce,* 5 *Har.* 351, the Superior Court said:

"A seal upon wax is not necessary; but something designed to answer the purpose of a seal is necessary. * * * It may seem absurd to give consequence to a mere scroll seal made by the flourish of a pen; but such a seal is as good at this day as the wax seal was formerly. Once it answered the purpose of identification, being marked with a device belonging to the party who used it; now the identification is produced by the signature; and the seal now as well as formerly, fixes the character of the instrument to which it is affixed."

But it is contended by the respondent, Laird & Company, that because there are neither impressions of seals upon the notes, nor any *testimonium* clause or other recitals contained in them indicating that they were intended to be executed and delivered as sealed instruments, they cannot be regarded as such. On this question the cases in other jurisdictions are in conflict. In this state, in *Conine v. Junction & B. R. Co.,* 3 *Houst.* 288, 89 *Am. Dec.* 230, the Court of Errors and Appeals, in considering the character of a bill of exchange signed by a corporation, and on which the

seal of the corporation was impressed, but which did not contain any *testimonium* clause, said:

"The more approved mode of executing a deed by a corporation, is to conclude the instrument by saying 'In testimony whereof the common seal of the said corporation is hereunto affixed.' But this is not necessary to the validity of the instrument."

The court held the instrument in question to be a sealed instrument.

In the case of *Armstrong v. Pearce, supra,* the proposition was reversed. There it was urged that the words "witness my hand and seal" contained in the note implied a seal. The court said:

"The expression in the body of the note 'witness my hand and seal,' does not make the seal."

In the case of *Lorah v. Nissley,* 156 *Pa.* 329, 27 *A.* 242, the question concerning the character of the note in controversy was precisely the same as here, except the printed word "Seal" was not in parentheses or enclosed in any other manner, while here the word on each of the notes is in parentheses. There, as here, there was no recital by *testimonium* clause, or other recital in the instrument indicating that it was intended to be executed as a sealed instrument. This is shown by a copy of the note which appears in the Pennsylvania Report, but not in the Atlantic Reporter. In this case the maker of the note used a printed blank, and wrote his name to the left of the printed word "Seal," so as to bring the latter into the usual place for a seal. At the expense of brevity a considerable portion of the opinion of Mr. Justice Mitchell is quoted. It is both illuminating and convincing. He aptly said:

"If, therefore, the word 'seal' on the note in suit had been written by Nissley after his name, there could have been no doubt about its afficacy to make a sealed instrument. Does it alter the case any that it was not written by him, but printed beforehand? We cannot see any good reason why it should. Ratification is equivalent to antecedent authority, and the writing of his name to the left of the printed word, so as to bring the latter into the usual and proper place for a seal, is ample evidence that he adopted the act

of the printer in putting it there for a seal. The note itself was a printed form, with blank spaces for the particulars to be filled in, and the use of it raises a conclusive presumption that all parts of it were adopted by the signer, except such as were clearly struck out or intended to be canceled before signing. The pressure of business life and the subdivision of labor, in our day, have brought into use many things ready-made by wholesale, which our ancestors made singly for each occasion, and among others the conveniences of printed blanks for the common forms of written instruments."

Mr. Justice Mitchell's opinion, to me, is sound and convincing. It leads me to but one conclusion, which is that the notes held by the banks are obligations or contracts under seal.

There is another compelling reason why I must arrive at the same conclusion. In the absence of judicial precedents in a jurisdiction it is often necessary to look at prevailing usages and customs within such jurisdiction to ascertain its common law. In 11 *Am. Jur.* 155, in speaking of the common law, it is stated that

"It is constantly expanding and developing in keeping with advancing civilization and the new conditions and progress of society and adapting itself to the gradual change of trade, commerce, arts, inventions, and the needs of the country."

Irrespective of what may have been our common law, at the time of the separation, it has been a matter of general and common knowledge in this state for many years past that usage and custom has sanctioned the use of printed forms of notes and other contracts with the word "Seal" printed on the form immediately to the right of the place intended for the signature, and that when such a printed form is used for the purpose for which it was intended, and is signed to the left of and in line with the printed word "Seal," upon the delivery of the executed obligation for or on behalf of the maker to the person for whom it was intended, or to his authorized agent, the character of the obligation of the maker is that of an obligation or contract under seal, irrespective of whether there is any indication in the body of the obligation itself that it was intended to be a sealed instrument.

In accordance with the above, my finding and determination is:

That the demands of First National Bank of Pittston, Pennsylvania, and Dime Bank and Trust Company, of Pittston, Pennsylvania, respectively, are obligations or contracts under seal and therefore are within the eighth class in the order of preference in the payment of debts of said decedent, under said *Section* 3837 *of the Revised Code of* 1935, *as amended by Chapter* 191, *Volume* 41, *Laws of Delaware.*